UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

SPECIAL COUNSEL
EX REL. CARMINE A. TARANTINO,
      Petitioner,

      v.

SMITHSONIAN INSTITUTION,
      Agency.

DOCKET NUMBER
CB-1208-16-0027-U-1

DATE: September 23, 2016

# THIS STAY ORDER IS NONPRECEDENTIAL[1]

Julie R. Figueira, Esquire, Washington, D.C., for the petitioner.

Amy Koontz, Esquire, Washington, D.C., for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman

## ORDER ON STAY REQUEST

¶1      Pursuant to 5 U.S.C. § 1214(b)(1)(A)(i), the Office of Special Counsel (OSC) has requested a 45–day stay of the agency's change of Carmine Tarantino's work schedule and duty station to allow OSC to investigate Mr.

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Tarantino's prohibited personnel practice complaint. For the reasons set forth below, OSC's request for a stay is GRANTED.

## BACKGROUND

¶2 In its September 20, 2016 stay request, OSC alleges that it has reasonable grounds to believe that the agency changed Mr. Tarantino's work schedule and duty station in reprisal for protected activity under 5 U.S.C. § 2302(b)(9)(B) and (b)(9)(C).[2] According to OSC, Mr. Tarantino is a Utility Systems Repairer Operator with the Smithsonian Institution in New York City, New York, and a union steward for the American Federation of Government Employees (AFGE) Local 2463. OSC alleges that, in November and December 2015, in Mr. Tarantino's capacity as a union steward, he filed claims or complaints with the Department of Labor (DOL), the Occupational Safety and Health Administration (OSHA), and the agency's Office of Safety, Health, and Environmental Management (OSHEM), on behalf of a coworker, A.G., regarding an incident where A.G. was sent to the hospital after their second‑level supervisor, G.H., made him perform a painting project without protective equipment. OSC further contends that on November 22, 2015, Mr. Tarantino filed a complaint with the agency's Office of the Inspector General (OIG), in which he alleged that G.H. had retaliated against A.G. and submitted false statements to OSHA and OSHEM.

¶3 According to OSC, on November 24, 2015, two days after Mr. Tarantino filed the OIG complaint, G.H. notified Mr. Tarantino that he was changing his work schedule and duty station from a third shift tour of duty (Sunday through Thursday from 10:30 p.m. to 7:00 a.m.) at the Cooper Hewitt Smithsonian Design Museum, to a first shift tour of duty (Monday through Friday from 7:30 a.m. to

---

[2] OSC further alleges that, in reprisal for Mr. Tarantino's protected activity, the agency issued him a letter of reprimand and suspended him for 2 days. However, OSC does not request a stay of these actions.

4:00 p.m.) at the National Museum of the American Indian.[3] OSC contends that G.H. was aware that the new work schedule would create a significant hardship for Mr. Tarantino due to his childcare responsibilities. OSC further contends that the new duty station put Mr. Tarantino in close proximity with G.H. and that the fear of retaliation caused Mr. Tarantino to experience debilitating anxiety and panic attacks, rendering him unable to work. According to OSC, Mr. Tarantino has been on medical leave for 8 months and has exhausted his paid leave.

## ANALYSIS

¶4     Under 5 U.S.C. § 1214(b)(1)(A)(i), OSC may request that any member of the Merit Systems Protection Board order a stay of any personnel action for 45 days if OSC determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice.[4] Such a request shall be granted unless the Board member determines that, under the facts and circumstances involved, such a stay would not be appropriate. 5 U.S.C. § 1214(b)(1)(A)(ii). OSC's stay request need only fall within the range of rationality to be granted, and the facts must be reviewed in the light most favorable to a finding of reasonable grounds to believe that a prohibited personnel practice was (or will be) committed. *See Special Counsel ex rel. Aran v. Department of Homeland Security*, 115 M.S.P.R. 6, ¶ 9 (2010).

---

[3] Although not specified in the September 20, 2016 stay request, I assume that the agency changed Mr. Tarantino's duty station to the National Museum of the American Indian in lower Manhattan, rather than the National Museum of the American Indian in Washington, D.C., as OSC did not allege that the agency required him to work in a different city.

[4] In the September 20, 2016 stay request, OSC represents that the agency contends that OSC does not have jurisdiction over the Smithsonian Institution or its civil service employees under 5 U.S.C. § 2302. To the extent that the agency contends that OSC lacks authority to request a stay or that the Board lacks authority to order a stay, the agency is incorrect. The Board has held that the Smithsonian Institution is an "agency" under 5 U.S.C. § 2302(a)(2)(C). *See Pessa v. Smithsonian Institution*, 60 M.S.P.R. 421, 425 (1994).

¶5        It is a violation of 5 U.S.C. § 2302(b)(9)(B) to take a personnel action because of an employee "testifying for or otherwise lawfully assisting any individual" in the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation. 5 U.S.C. § 2302(b)(9)(A), (B); *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 10 (2015). It is a violation of 5 U.S.C. § 2302(b)(9)(C) to take a personnel action because of an employee cooperating with or disclosing information to the Inspector General of an agency, among other things. As OSC states, to establish a prima facie violation of either 5 U.S.C. § 2302(b)(9)(B) or (b)(9)(C) it must show that: (1) the employee engaged in protected activity; (2) the official(s) who recommended or took the personnel action had knowledge of the protected activity; (3) a personnel action was threatened or taken; and (4) the protected activity was a contributing factor in the challenged personnel action. *See Office of Special Counsel ex rel. Aran*, 115 M.S.P.R. 6, ¶ 7 (describing a prima facie violation of 5 U.S.C. § 2302(b)(8)); *see also Hooker v. Department of Veterans Affairs*, 120 M.S.P.R. 629, ¶ 9 (2014) (discussing the effects of changes in the statutory language at 5 U.S.C. § 1221(e)(1) on the protections afforded activities addressed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D)).

¶6        Performing union‑related duties, such as filing grievances and representing other employees in the grievance process, are protected activities under section 2302(b)(9)(B). *Alarid*, 122 M.S.P.R. 600, ¶ 10. Based on the information provided by OSC, it appears that Mr. Tarantino may have engaged in protected activity under section 2302(B)(9)(B) in his capacity as a union steward when he filed claims or complaints with DOL, OSHA, and the agency's OSHEM on A.G.'s behalf. Based on the information provided by OSC, it also appears that Mr. Tarantino may have engaged in protected activity under section 2302(b)(9)(C) when he filed the OIG complaint.

¶7        Next, OSC alleges that G.H. had knowledge of Mr. Tarantino's protected activities. OSC contends that Mr. Tarantino interacted with G.H. while pursuing

the DOL, OSHA, and OSHEM claims and complaints on A.G.'s behalf. OSC further contends that Mr. Tarantino notified G.H. that he intended to file the OIG complaint.

¶8 Based on OSC's allegations in the stay request, the change in Mr. Tarantino's work schedule and duty station could constitute a "personnel action" as defined in 5 U.S.C. § 2302(a)(2)(A). That definition includes, in pertinent part, a "significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii).

¶9 Finally, the contributing factor element may be established through the knowledge/timing test, i.e., that the official taking the personnel action knew of the protected activity and the personnel action occurred within a period of time such that a reasonable person could conclude that the protected activity was a contributing factor. *See Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 18 (2015); *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 7 (2014). According to OSC, G.H. learned of the OIG complaint and of Mr. Tarantino's activities as A.G.'s union steward in November 2015, the same month that he changed Mr. Tarantino's work schedule and duty location, which would satisfy the knowledge/timing test. *See Mastrullo*, 123 M.S.P.R. 110, ¶ 21 (recognizing that a personnel action taken within approximately 1 to 2 years of an appellant's protected disclosures satisfies the knowledge/timing test). In addition, OSC contends that attendant circumstances suggest that Mr. Tarantino's protected activity was a contributing factor in G.H.'s decision to change his work schedule and duty station. In particular, OSC alleges that the agency did not include Mr. Tarantino on a list of employees proposed for shift changes that it gave to the union a month before G.H. notified Mr. Tarantino that his work schedule and duty station would be changed.

¶10 Thus, given the deference that should be afforded to OSC and the assertions made in its stay request, I find that there are reasonable grounds to believe that the agency took a personnel action against Mr. Tarantino based on his protected

activity in violation of 5 U.S.C. § 2302(b)(9)(B) and (b)(9)(C) when it assigned him to a different work schedule and duty station.

**ORDER**

¶11     Based on the foregoing, I conclude that granting OSC's stay request is appropriate.    Accordingly, a 45–day stay of the agency's change of Mr. Tarantino's work schedule and duty station to a first shift tour of duty at the National Museum of the American Indian is GRANTED.  The stay shall be in effect from September 23, 2016, through and including November 7, 2016.  It is further ORDERED that:

(1)    Mr. Tarantino shall be reinstated to his former third shift tour of duty at the Cooper Hewitt Smithsonian Design Museum, with the same duties and responsibilities, and at the same salary and grade level that he would have held if his work schedule and duty station had not been changed;

(2)    Following Mr. Tarantino's reinstatement to a third shift tour of duty at the Cooper Hewitt Smithsonian Design Museum, the agency shall not effect any change to his tour of duty or work location;

(3)    The agency shall not effect any change in Mr. Tarantino's duties and responsibilities that is inconsistent with his salary or grade level or impose upon him any requirement that is not required of other employees of comparable position, salary, or grade level;

(4)    Within 5 working days of this Order, the agency shall submit evidence to the Clerk of the Board showing that it has complied with this Order;

(5)    Any request for an extension of this stay pursuant to 5 U.S.C. § 1214(b)(1)(B) must be received by the Clerk of the Board and the agency, together with any evidentiary support, on or before October 21, 2016.  *See* 5 C.F.R. § 1201.136(b).  Any comments on such a

request that the agency wants the Board to consider pursuant to 5 U.S.C. § 1214(b)(1)(C) must be received by the Clerk of the Board, together with any evidentiary support, on or before October 28, 2016.


FOR THE BOARD: _____
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.